The final case for argument this morning is 24-2299 Verdigm v. DBG. Good morning, please proceed. Good morning, may it please the court. The finding of prosecution disclaimer should be reversed. Summary judgment of non-infringement should be vacated and the case should be remanded. No prosecution disclaimer occurred here. If you got a look at the prosecution as a whole, in this case the prosecution took place over two and a half years. Here we have one allegedly disclaiming statement, 25-27. Can you focus on any arguments you have for why, if that were the only thing that there was, why that might not be enough, as opposed to everybody kind of ignored it afterwards, the rest of the prosecution history? I'm sorry, Your Honor, I'm not sure I follow the question. I'd like you to look at, I guess, what is on 25-56 and 7-82, it's in here two places. There's one paragraph, that's what this is, that's the affirmative basis for the ruling below of prosecution disclaimer and then the argument or the analysis went on to say what happened later didn't neutralize that. I want you to put aside that second thing, the what happened later didn't neutralize it, and tell me, do you have some reason why we should conclude that this paragraph, the 25-56, does not amount to a disclaimer even when considered in isolation? Yes, Your Honor, with respect to, and I believe the we're looking at is 25-27. 25-27? 25-56 was the examiner's rejection of that argument. Oh, okay. So with respect to that alone, now, you do have to look at the prosecution as a whole, so let's step aside from that test, which requires us to look at the prosecution. Just to put a little more polish on this, it's just that I understand you have argued that what is at 25-27 is not alone a clear and unambiguous disclaimer. Is that correct? Have you argued that? This is not a clear and unambiguous disclaimer. I believe that has been argued, Your Honor. Okay. Why not? That's the question. Just looking at this paragraph alone, why not? Sure. The paragraph refers to, and refers to the examiner's rejection and refers to Bigelow 1 as discussing reflectivity. Reflectivity is different than whether or not something is a specular reflector. Reflectivity, let's take an example. Snow versus water. Snow, very high reflectivity, approximately 90%. This isn't in the record, this is just, these are just facts. Okay. Snow bounces off versus absorbed, not anything about direction of bouncing off. Correct. Okay. Percentage reflected versus whether or not it's reflected in a particular direction. Water, very low reflectivity, 5-25%, let's say. Snow will not be a specular reflector. Water can be a specular reflector, even though its reflectivity is much lower. And the reason why, is specular meaning a very directed reflection as opposed to a diffuse reflection? Generally, that's correct. So a specular reflector is something that has a, gathered in a particular, generally in a particular direction, versus non, versus diffuse. Correct. So with respect to that, the discussion at 25-27 is referring to reflectivity rather than whether or not something is a reflector. And that's where Bigelow discloses only that certain materials have UV reflectivity, is what's being referred to there. And what about this 90% language? In the specular nature of the reflector? I would say that reflects, that relates to reflectivity as well. With respect to 90%, if we're talking about snow, snow can be, have high reflectivity. Water has very low reflectivity. Snow will not be a specular reflector. Water can be a specular reflector. And there's a discussion in the record with respect to reflectivity versus whether or not something is a reflector. And that's with respect to appellant's expert, Dr. Milster. Well, can I get back to this just before you get to that? Sure. What about the last sentence in this paragraph that's being relied on, which seems to me to be the most difficult sentence for you. It says, nowhere in Bigelow is anything regarding a specular reflector disclosed, either expressly or inherently. And it's the or inherently that could be a problem for you. If the statement is taken alone without the respect? Well, if it's taken in the context of knowing that Bigelow teaches a polished aluminum baffle, right? Yes, right. And so if then you're saying that nowhere in Bigelow does it inherently disclose a specular reflector, is that saying that there's no aluminum, that an aluminum, polished aluminum baffle cannot be specular? I don't, I don't think it's saying that. I think what it's saying is that with respect to Bigelow, there's not a discussion of whether or not this is a specular reflector. What? What about inherently? Inherently does go one step further than expressly, for sure. And that's where I think you need to take a look at the prosecution history as a whole. Have you disclaimed anything in Bigelow that could arguably act as the specular UV reflector? No, because I think you have to take a look at the statement as a whole in light of the prosecution history. You can't just take the statement in isolation. You've got to take a look at what the examiner said in response. Is this sentence or the whole paragraph a clear and unambiguous disclaimer? That's not the test. The test is whether the prosecution history as a whole reflects the question. I know, but I just wanted, I wanted to hear what you thought of this paragraph alone. I thought you were saying that this paragraph on its own wasn't enough, that it was ambiguous. And then when you look at the whole history, it makes it even more clear that it's not a disclaimer. But I think that's why we were focusing on this paragraph first. Sure. I mean, I think the statement as a whole is ambiguous, and I think that's because in part it refers to reflectivity as opposed to whether something is a specular reflector. But I do think the test requires you to take a look at the prosecution history as a whole and to take a look at what happened in the back-and-forth process between the patent office and the applicant. Let's assume we disagree with you that it's an ambiguous statement. Then our case law requires that you have just sort of disclaimed it, right? I mean, your briefing sort of indicated that you were saying you disclaimed it afterwards. Disclaimed the statement or disclaimed... No, I'm sorry. Maybe disclaim is the wrong word to use in this context. That you undid it, retreated it, whatever. Yeah, I think the back-and-forth with the patent office shows that there was a negotiation going on and that this statement was retreated from, for sure. And I think it was expressly rejected by the examiner at one spot, and that's the point where Judge Toronto pointed to A2556. The patent office rejected that statement. The statement was made in response to rejection. I don't know where it is in my notes now, but later on you said affirmatively something like, I'm not agreeing or disagreeing with what the examiner said, right? There were statements of... So you didn't say, yes, we agree with the examiner. Which is almost never going to appear in any prosecution history. So you're relying on what the examiner said, but not what you said in relationship to what you had said earlier that Judge Estella was pointing to. Relying on everything that was in the prosecution history. The back-and-forth. The original statement of the case, the rejection of that statement, and then the additional three rejections over Bigelow I in view of the fact that the examiner said Bigelow I does in fact disclose a specular UV reflector. Did you ever argue anywhere after this argument on page 2527 that Bigelow discloses, does not disclose a specular reflector? No, but the applicant accepted the examiner's position that it did. And the examiner took that position four times. Once in expressly rejecting the argument, and three more times in stating that Bigelow I does disclose a specular UV reflector, referring to the same evidence, and even saying, going so far as to saying it continues to disclose a specular UV reflector. So there's no question, there's no doubt, the examiner very clearly took the position Bigelow I does disclose a specular UV reflector. Never once... Is it correct that the existence of the prosecution history disclaimer is a question of law? I believe it is a question of law. Yes, Your Honor. The burden, however, is on the party asserting disclaimer, the accused infringer to assert, to identify the disclaiming statement, and also to show why it is clear and unmistakable that it was a disclaiming statement. Never once after A2527 did the applicant ever repeat the allegedly disclaiming statement, not in response to Rejection 2, Rejection 3, or Rejection 4. Can you cite a case? I mean, if you say something once, and let's assume we think it's clear, the fact that you don't repeat it several times means that you didn't mean it, and we can ignore it, and the public can ignore it for purposes of notice? The public doesn't have to ignore it. The public can look at the prosecution as a whole. Yes, there are three cases. The three cases are Eagle Lab, Malvern, and Gildermo. And with respect to Malvern, for example, Malvern A5F4 at 1376, there was no clear and unmistakable disclaimer where the allegedly disclaiming statement was made just once. The examiner rejected the argument several times. The argument was abandoned, and the reference in question was not prior art. The court said, in these circumstances, where an applicant abandons its unsuccessful argument, we conclude that the prosecution history lacks the clarity necessary to establish prosecution disclaimer. And where is the abandonment here? The abandonment was in the failure to, one, failure to contest the examiner's express rejection of the argument, and then the examiner's subsequent three rejections without traverse. Have, the word abandonment is, does, I guess sometimes one might use that word to mean affirmatively repudiate, and sometimes one might use it to mean stopped pressing, is, which, which is important. I think the case law here looks at whether there was a state, whether there was a statement of protest or not. Did Malvern, affirmatively, in the Malvern case, did the patent owner, prosecutor, affirmatively say, I abandoned this argument, or I'm giving up this argument, or did they just discontinue making? Just discontinued. And that's the same case in Ecolab, 569 F3rd at 1343. There was no clear and unmistakable disclaimer where the disclaiming statement was made only once and never repeated. Examiner rejected the allegedly disclaiming statement, and the applicant overcame the prior art references based on alternative reasons without changing the relevant claim language. DBG, appellee, attempts to erase Malvern and Ecolab or somehow imply that they're bad law by contending that if there's any tension between those two cases and Springs-Window, Springs-Window came first and therefore controls. DBG is wrong. Springs-Window applies an outdated test, one that required only reasonable clarity to find a disclaimer, not the test that requires clarity and unmistakability, as was clarified and set forth in Omega Engineering just five months after Springs-Window, 323 F3rd at 994 versus 334 F3rd at 1326 through 28. Those cases were decided in February and July 2003. What's the difference? The old inapplicable test applied by Springs-Window allowed room for ambiguity. The new test requires a disclaimer to be clear and unmistakable. So, the Malvern and Ecolab cases decided in 2023 and 2009 are very much good law, as is Galderma, which was decided in 2020. There, a patentee's claim construction argument was expressly rejected by the PTAB. There was no clear and unmistakable disclaimer because that claim was rejected by the PTAB. Regardless, even Springs-Window itself does not compel a contrary result. There, the statements distinguishing the prior were consistent and repeated. Even when Springs-Window moved on to new arguments to swear behind a reference, it still maintained substantive arguments over the prior, the ones that were allegedly disclaiming, 323 F3rd at 996. You're into your rebuttal. Shall we save it in here for the other side? I'll reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the court. I believe it's clear that the statement in the prosecution history is a clear and unambiguous disclaimer. It states, quote, nowhere in Bigelow 1. We know what it states. We've been through this before. But what do you say to your friend's response that it was not pressed further and that the examiner rejected it and they moved on? So does that displace a reliance on clear and unambiguous statement? Thank you, Your Honor. I appreciate the question. And this goes to Judge Taranto's comment that there's a- By the way, we're moving beyond that paragraph. Don't think that I'm not going to ask you to go back to that paragraph and explain why that's a starting point. I'm happy to, Your Honor. No, no, no, don't. So there's a difference between moving on and acquiescing. So the applicant, when an argument is rejected, the applicant has a decision. I can continue to press this or there may be an alternative, faster way to allowance for the application. And that's what happened in this case. In this case, the applicant apparently saw that it was not going to convince the examiner of its position. So instead, it took an alternative path toward allowance and that was to amend the claim. But, and this is the critical distinction between this case and the others that they rely on. Here, the applicant expressly states that it is reserving the right to go back and revisit its prior argument should the need arise. It's all arguments that they've made, right? Exactly. They're not conceding. And I'm just, I wanted to make sure it was clear. It's a general statement, right? I mean, I do think, I hear what you're saying. I do think the fact that it's a general statement at the end of every paper they've submitted suggests that it might not have an import that is as strong as what you're suggesting. That's what they would like to argue. But see, that's the problem here. In Microsoft, this court held that we take the patentee at its word. And in CCHANGE, this court held that we don't look to the applicant's intent of what it says. It is putting a public record, what it says is going into a public record that it knows the audience is not just the examiners at the office, but also the public. And so if an applicant can go and make its arguments and then at the end say, we reserve all of our rights to go and revisit any arguments or any statements not addressed. Well, even today, you saw what happened. Today, my friend got up and he argued that the examiner was wrong to cite to the reflectivity in Bigelow as a basis for finding that it's a specular reflective. Even now they're arguing. I think they're arguing that to show that what reflectivity is, what specular reflectivity is versus just reflectivity, to understand the nature of the language that is that page A2527 and the context in which they were saying these things, right? That's what they were talking about. I don't know that he was affirmatively saying, let me prove on appeal here the examiner was wrong. He was trying to explain what this language meant and how they were talking about specular as opposed to a percentage of reflectance. That's what I heard. That's the purpose for which they're making the argument. But in the event, they're still arguing that the examiner's reliance on that as being relevant to specular reflectivity was wrong. And if we were standing now in front of a PTAB panel and they were arguing for validity over prior art that was made of aluminum baffles, they would be pointing to that very statement in the prosecution history, saying we reserve the right to argue that aluminum is not a specular reflector. Do you agree with them, by the way, getting into the language of this? What is your view of specular here? The district court said that here in this language, they have disclaimed anything that has a UV reflectivity or 90% or higher and is made of aluminum. I think that's what she said. She was focusing on the 90% or higher when she was talking about their disclaimer, what this paragraph was talking about as a technical matter. What do you think this paragraph is talking about as a technical matter when it's talking about specular reflectance? I'm talking about the paragraph that is the main one that we've been talking about today. The examiner's statement? Page 2527. Okay, so the examiner's statement. No, what the applicant said. Oh, the applicant's response to the examiner's statement. I think that they are talking about the fact that reflectivity is different than specular reflection. Reflectivity is the amount of light reflected. Specular goes to the angle that the light is reflected. I believe that's what they're talking about, but I also believe that they are stating that, so they're pointing out that the examiner is wrong and they're pointing out that aluminum does not have, while it may have 90% reflectivity, it's not a specular reflector. And so they're arguing that the aluminum doesn't meet the claim language because it's not specular, even if it does have 90% reflectivity. That's what they're arguing, and that's the clear and unambiguous disclaimer. So, Judge Taranto, you said you wanted to return to a question. You just did. Okay. Okay, thank you. Now, my friend has talked about three cases. I'd like to address those. First, the first is Ecolab, and this case is different in Ecolab. In Ecolab... I'm sorry, I'm going to retreat, I think was the word before, about being done. The word inherently. So, nowhere in Bigelow does the non-diffusiveness of the reflection, I'm just going to use that expression instead of specular, because that's what I think you just agreed it means, right? It's not discussed expressly, and it's not inherent. So, what would you take the word inherent? It clearly is not discussed expressly, but how do you get to the conclusion that what's being said is no aluminum, including no unpolished aluminum, could have this highly directed non-diffuse reflection? Well, that's what... As opposed to, it doesn't always have that. Well, that's what, as I read the applicant's position, they're stating that polished aluminum cannot be a specular reflector. It's not according to the language of the patent. I mean, usually the word inherently in this business means that something, a property is always present, not that it can never be present. So, when you say, when this says Bigelow didn't say it was present, and what it described, what Bigelow described, doesn't always have that property, isn't there a gap to get to the next stage, the next step of saying that the applicant here was saying even polished aluminum, let alone unpolished, or polished aluminum, polished or unpolished, can never have this property? Well, I think that's exactly what the applicant is driving at, because polished aluminum, it's either going to be specular or it's not. It's an up-down question, right? It's binary. Either it's a specular reflector or it's not. And so that's why they, I believe, and that's what I understand, is the reason for why they include it inherently, because the words in Bigelow, the description in Bigelow, does not address whether it's a specular reflector or not. So, this argument relies on the idea, and I don't remember how much this is discussed here, that, as you say, there's this binary property of polished aluminum, and either it reflects in a highly directed non-diffuse way with respect to the UV rays, not anything else, or it doesn't. And is that a clear... I mean, it seems to me that's the premise of the disclaimer argument here, of the reading of this. Is that premise in dispute? And is it... Why should it be so clear? Well, because that's what the applicant argued. He argued that it doesn't inherently... So, by... Well, go ahead. I'm sorry. Answer that question. I have another question for you, relatedly. So, by... Because the examiner could have come back and said, look, it doesn't... The words of this description don't say it's specular, but polished aluminum, by its nature, is specular. It's inherent, because that's a nature or a quality of polished aluminum. And that's why the applicant is doubling down and saying, not only is it not discussed in the words, expressly, it's not inherent, because polished aluminum, by its nature, is not a specular reflector. And I don't know how they could have made the disclaimer any more clear and ambiguous. Okay. So, I think that, to try to answer the question about, is there some sort of scientific understanding here, I guess, between the parties about whether polished aluminum is specular or not? And you're saying it's not. What about unpolished aluminum? I mean, I understand, as a person sitting here, just generally, that probably something that's more polished has a higher reflectance than something that's unpolished. Well, what I don't know is whether something that's polished versus unpolished, how that changes the diffuseness of the reflection. So, there's no contention, as I understand it, that if polished aluminum does not qualify as a specular reflector, unpolished aluminum would also not qualify. As the district court found, because unpolished aluminum is less specular as a reflector than polished aluminum. Unpolished aluminum— Saying that's undisputed. That's undisputed. I mean, because you say that, and I don't know. So, I have to take it as an undisputed fact. Because I don't—of course, it's a summit judgment, so it can't be something where there's a dispute. Certainly, Your Honor. I'm not aware of anywhere where they've argued that even if the polished aluminum were found to be specular, or not specular, unpolished would qualify where polished doesn't. If anything, the opposite would be true. Exactly, exactly. Everybody agrees that unpolished aluminum is less specular of a reflector than polished aluminum. Can I ask you something else? Where it says nowhere in Bigelow is anything regarding a specular reflector disclosed, either expressly or inherently, why can't I understand that inherently part to mean it's not necessarily so that Bigelow's polished aluminum baffle is specular? Well, again, this goes back to the discussion I had with Judge Taranto, that either specular reflectivity is a nature or quality of polished aluminum or it's not. And so, when they— We're trying to figure out what this person said and what sort of import it has as barring them from being able to, you know, argue that aluminum can be specular. And so, we have to understand what this sentence says. And you're saying that this sentence, I'm supposed to read from it, it's binary. And it means— And when it just says— And it doesn't— It's not necessarily specular. That means that they said it's not specular. Yes, I think that that's the correct reading. And especially whereas they use this to argue around the prior art, which clearly had a polished aluminum reflector in it, that's disclaimer. You look at what a reasonable competitor would read from this language that the applicant chose to put into the prosecution history. And the notice function of the prosecution history is to allow competitors to make reasonable business decisions. This is in the course case law. And a reasonable competitor reading that paragraph is going to understand that the applicant has said, my invention does not cover aluminum reflectors. And then, the competitor, my client, DGB, has gone out, they make aluminum reflectors, and now they're being sued for having made the aluminum reflectors. I mean, this falls squarely within Spring's window. Spring's window, it's amazing how similar it is. Spring window says, a patentee may not state during prosecution that the claims do not cover a particular device, then change position and later sue a party who makes that same device for infringement. That is exactly what has happened here. They said, we don't cover aluminum. Then they've turned around and sued DBG for using aluminum. And they say, well, when you read the prosecution history as a whole, we acquiesced. But as the district court correctly found, they didn't acquiesce. They reserved the argument. They moved on to a secondary argument, reserving the first argument to go back to it in the case they needed to. For example, in an IPR, if they were arguing invalidity before a PTAB panel, they would be arguing that the polished aluminum is not specular. They would be going back to that argument. And if we tried to say, well, no, you acquiesced, they would say, no, we reserved our right. I'm never really sure what to make of those arguments that says, that recognizes the kind of mirror image-like quality of infringement and invalidity in terms of, well, the other side would be arguing the following if we had an invalidity case. I don't see that that advances the ball. It's just stating exactly the same thing in a counterfactual way, which doesn't feel like it helps much. Either this meets the standard for disclaimer or it doesn't. Well, exactly. And it does. And they can't rely on acquiescence here where they didn't concede the point. They reserved the argument to be able to make it later. That's not acquiescence. As the district court found, that's the antithesis of acquiescence. Thank you. Thank you. Thank you. With respect to whether there's any evidence in the record that the unpolished aluminum of the accused device is a specular reflector, the answer is yes. There is testimony from appellant's expert, A2917 through 2920. Is this something that was at issue during the summary judgment hearing? Yes, evidence that was to show that the accused device, unpolished aluminum, was a specular UV reflector. That's correct. So your view is that you didn't concede anything on this factual dispute? Did not concede anything on that dispute. That's correct. There was no contrary evidence provided by the appellee. The evidence that was provided was in the visible spectrum, not the UV spectrum. With respect to case law and disclaimer, acquiescence, while not necessary to rebut disclaimer? Can I ask you this question? Yes. I know your time is running out. The 90%, if you had a surface that reflected only, in any direction at all, 10% of the UV rays, but it reflected it in a perfect V. Is that a specular reflector? Could still be a specular reflector. So the percentage of the UV rays going out divided by the number going in is not particularly relevant to whether it's specular. My understanding is that's reflectivity, not whether or not something's a specular reflector. And that goes to the snow versus water example that I used earlier. You do have to look at the prosecution history as a whole. They've isolated the one statement. But whether or not something is clear and unmistakable, to look at whether acquiescence occurred, their only argument is the reservation of rights statement. But the rights that were reserved are inherent to all applicants. And that's because the back and forth negotiation process of patent prosecution doesn't create res judicata, collateral estoppel, or even solidify any rights until a patent issues. The case, the statement by DBG is correct, that all that's required is some form of acceptance. And what the case law cited by the district court here, it was some kind of IP, that said that acceptance without protest. That means that acquiescence can be implicit. Right? So here, applicant accepted the express rejection of the argument, plus three more claim rejections, and moved on to other arguments as to why the claims were allowable without once repeating the argument that was rejected. I remember that some of the language that you added at the end to get the allowance was making sure there was a direct communication or path from the reflector to the target in your claim. That's the language you added, which I think about having a direct... It doesn't matter. Oh, the direct is part of it. There's ionization as part of it. And then there's also a range on the top and bottom sidewall that was the claim language that was added as well to overcome Bigelow 1, as well as other prior art in the case. Thank you. Thank you, Your Honor. I thank both sides of the case for submitting their testimony.